FILED
2017 Oct-16 PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **FEDERAL NATIONAL MORTGAGE ASSOCIATION,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.:** |
| **PF SUNRISE POINTE LLC,** | ) | |
| **Defendant.** | ) | |

**VERIFIED COMPLAINT FOR THE APPOINTMENT OF RECEIVER, INJUNCTIVE RELIEF, AND OTHER EQUITABLE AND LEGAL RELIEF**

**COMES NOW,** Federal National Mortgage Association ("Fannie Mae" or "Plaintiff"), and for its verified complaint against Defendant, PF Sunrise Pointe LLC ("Defendant" or "Borrower"), states the following:

**PARTIES**

1. Fannie Mae is a federally chartered corporation which has a principal place of business in the District of Columbia.

2. Borrower is an Alabama limited liability company that owns property located at 7716 Sunrise Circle, Birmingham, Alabama 35210.

3. Borrower maintains a registered agent, VCORP Agent Services Inc., located at 3040 Overton Road, Birmingham, Alabama 35223.

4. Upon information and belief, neither the members of Borrower, nor the entities or individuals that are partners or members of the corporate parents of Borrower, are citizens of the District of Columbia.

4832-4047-2912 v3
2903115-000048

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because property that is the subject of this action is situated in this judicial district.

## INTRODUCTION

7.      Plaintiff files the instant action to, among other things, protect the Plaintiff's interest in a multifamily residential complex commonly known as the "Sunrise Pointe Apartments," located in Jefferson County, Alabama, at 7716 Sunrise Circle, Birmingham, Alabama 35210 (the "Facility").  Ancillary to its accounting and breach of contract causes of action pleaded herein, Plaintiff is seeking the appointment of a receiver for the operation of the Facility and to preserve and protect the Collateral (as defined herein), including the issuance of injunctive and other equitable relief to fortify the receiver's ability to operate the Facility, as well as other equitable and legal relief.

## FACTS

### A.      The Loan Obligations

8.      Borrower obtained a loan in the original principal amount of $9,900,000.00 (the "Loan") from Arbor Commercial Funding, LLC (the "Original Lender") pursuant to that certain *Multifamily Loan and Security Agreement (Non-Recourse)* dated as of April 15, 2015, executed by and between Borrower and Original Lender (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit "A".**

9.      The Loan is evidenced by that certain *Multifamily Note*, dated April 15, 2015, executed by Borrower in favor of Original Lender in the original stated principal amount of

$9,900,000.00 (as assumed, amended, and assigned from time to time, the "Note"). A true and correct copy of the Note and all allonges attached thereto is attached hereto as **Exhibit "B".**

10. In order to secure Borrower's obligations to Original Lender under the Note, Borrower granted to Original Lender a first priority security interest in certain real property (the "Real Property Collateral") pursuant to that certain *Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing* dated as of April 15, 2015, recorded among the land records maintained by the office of the Judge of Probate of Jefferson County, Birmingham Division (the "Recording Office") on April 15, 2015, as Book LR201512, Page 11189 (as assumed, amended, and assigned from time to time, collectively, the "Mortgage"). A true and correct copy of the Mortgage is attached hereto as **Exhibit "C".**

11. Pursuant to the Mortgage, Borrower's obligations are further secured by certain personal property, including, without limitation, Borrower's fixtures, furniture, goods, equipment, accounts, licenses, general intangibles, and other collateral related to the Facility (collectively, the "Personal Property Collateral" and together with the Real Property Collateral, collectively, the "Collateral"). The Collateral encompasses all real and personal property related to the Facility, including, without limitation, the Rents (as defined below).

12. Plaintiff's security interest in the Personal Property Collateral is also perfected through the filing of a UCC-1 Financing Statement with the Alabama Secretary of State on April 20, 2015 as Instrument No.15-0190596, and recorded in the Recording Office on April 15, 2015 in Book LR201512, Page 11214 (as amended, continued, and assigned from time to time, the "Financing Statement"). A true and correct copy of the Financing Statement is attached hereto as **Exhibit "D".**

13. As additional security for Borrower's obligations to Original Lender, Chaim Puretz ("Guarantor") executed that certain *Guaranty of Non-Recourse Obligations* dated as of April 15, 2015, in favor of Original Lender (as assumed, amended, and assigned from time to time, the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as **Exhibit "E".**

14. The Note, Mortgage, Financing Statement, Guaranty, and all other documents referring to, relating to, or evidencing the Loan are hereinafter referred to as the "Loan Documents." Any capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in the Loan Documents.

15. The Loan and Loan Documents were assigned by Original Lender to Fannie Mae by (i) that certain *Endorsement and Allonge to Promissory Note* attached to the Note; (ii) that certain Assignment of Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on April 15, 2015 in the Recording Office at Book LR201512, Page 11211 (the "Mortgage Assignment"). A true and correct copy of the Mortgage Assignment is attached hereto as **Exhibit "F"**.

16. Fannie Mae is the owner and beneficiary of the Loan Documents and holds all rights of Original Lender under the Loan Documents.

17. For purposes of this Complaint, all of the of the amounts owed by Borrower to Plaintiff under the Loan Documents, including, without limitation, any late fees, default interest, and yield maintenance payments, shall collectively be referred to herein as the "Indebtedness." Under the Loan Documents, in addition to the Indebtedness, Borrower is obligated to reimburse Plaintiff for costs and expenses incurred by Plaintiff in connection with the Indebtedness, including, without limitation, attorneys' fees and other costs of collection, servicing fees, and

costs of insuring, protecting, maintaining, or disposing of the Collateral (together with the Indebtedness, collectively, all such amounts are referred to herein as the "Obligations").

**B.        The Existing Defaults**

18.        In the Loan Documents, Borrower agreed to keep the Facility in good repair and marketable condition, to make repairs as required by Fannie Mae following Fannie Mae's notice of necessary repairs, and to perform all replacements and repairs in a good and workmanlike manner.

19.        Borrower has failed to maintain the Facility in good repair and condition.

20.        The Loan Agreement provides that Fannie Mae may, upon thirty days prior written notice to Borrower, require an additional deposit into the Repairs Account (as defined in the Loan Agreement) if Fannie Mae determines that the amount on deposit in the Repairs Account is not sufficient to cover the costs for required repairs at the Facility.  Similarly, the Loan Agreement further provides that, if Fannie Mae determines that there are not sufficient funds on deposit in the Replacement Reserve Account to cover expected future costs, it may demand additional deposits be made into such account.

21.        By letter dated May 8, 2017 (the "Demand Letter"), Fannie Mae, through its servicer, provided Borrower and Guarantor with a copy of a property condition assessment (the "Property Assessment") prepared by a third-party real property consultant that identified and recommended repairs and replacements at the Facility, including certain critical repairs and deferred maintenance explained therein.  A genuine and complete copy of the Demand Letter, which includes the Property Assessment, is attached hereto as **Exhibit "G"**.  In the Demand Letter, Fannie Mae made, *inter alia*, the following demands on Borrower and/or Guarantor in accordance with the terms of the Loan Documents:

(a) Fannie Mae demanded that the sum of $446,400.00 (the "Critical Repairs Deposit") be deposited into the Repairs Account held by the loan servicer within ten days in accordance with the terms of the Loan Documents.

(b) Fannie Mae demanded that the Borrower address the repairs listed as Critical Repairs in the Property Assessment within ninety days.

(c) Fannie Mae demanded that the sum of $139,478.00 (the "Deferred Maintenance Deposit") be deposited into the Repairs Account held by the loan servicer within ten days in accordance with the terms of the Loan Documents.

(d) Fannie Mae demanded that Borrower address the repairs listed as Deferred Maintenance in the Property Assessment within six months.

(e) Fannie Mae demanded that, beginning June 1, 2017, Borrower increase the Monthly Replacement Reserve Deposit by an amount of $6,765.33 so that the amount deposited by Borrower shall be equal to $16,638.67 per month to keep up with the ongoing maintenance of the Property following completion of the repairs identified in the Property Assessment.

22. Borrower has failed to make the deposits and complete the repairs demanded in the Demand Letter.

23. In correspondence dated May 18, 2017, Borrower, through its counsel, responded to the Demand letter disputing the Property Assessment and requesting additional assessments be undertaken. A true and correct copy of this correspondence is attached hereto as **Exhibit "H."**

24. In correspondence dated June 16, 2017 (the "Notice of Default"), Fannie Mae, through its counsel, (i) notified Borrower that the Borrower had failed to comply with the Demand Letter, resulting in a default under the Loan Documents; (ii) notified Borrower that the

Property Assessment was prepared by a reputable national firm in accordance with applicable professional standards and that no additional assessment was warranted; and (iii) reiterated the demand that Borrower comply with the Demand Letter immediately. A true and correct copy of the Notice of Default is attached hereto as **Exhibit "I."**

25. Borrower nonetheless failed to comply with the Demand Letter. Accordingly, the Loan is in default due to Borrower's failure to comply with the Demand Letter, including making the repairs and payments required thereunder (the "Events of Default").

26. In addition, the following liens (the "Liens") have been recorded against the Collateral:

(a) Lien in favor of SST Properties, Inc. c/o Donna Hyatt, in the original amount of $15,105.00, filed June 15, 2017 as Instrument No. 2017061149;

(b) Lien in favor of DCS TurnKey Inc. c/o Donna Hyatt, in the original amount of $6,730.00, filed June 15, 2017 as Instrument No. 2017061148; and

(c) Lien in favor of Maintenance Supply Headquarters, L.P., in the original amount of $9,096.43, filed July 18, 2017 as Instrument No. 2017073022.

27. Based on the Events of Default and Fannie Mae's discovery of the liens noted above, in correspondence dated August 18, 2017 (the "Acceleration Letter"), Fannie Mae notified Borrower that the Loan is accelerated and demanded payment in full of the entire unpaid principal balance of the Note, plus all accrued and unpaid interest and fees and costs due under the Loan Documents and further notified Borrower that Borrower's license to collect Rents from the Property is revoked and all such Rents are to be held in trust for the benefit of Fannie Mae. A true and correct copy of the Acceleration Letter is attached hereto as **Exhibit "J."**

28. In addition, through the Acceleration Letter, Fannie Mae notified Borrower and

Guarantor of the existence of the Liens and demanded that the Borrower take immediate action to remove the Liens of record.

29.     Borrower has failed to cure the default or satisfy the Obligations, and Borrower continues to receive Rents generated from the Collateral notwithstanding the default under the Loan Documents and the revocation of its right to collect Rents.

30.     In this action, Fannie Mae is seeking:

(a)   an accounting for and turnover of all Rents generated by the Facility;

(b)   appointment of a receiver to oversee, administer, and manage the Facility pending the foreclosure or other disposition of the Collateral;

(c)   a temporary and permanent injunction restraining and enjoining Defendant from transferring, disposing, wasting, and converting any rents, royalties, issues, profits, revenue, income, leases, security deposits, other deposits, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral (collectively the "Rents"), and other collateral securing the indebtedness owed, and directing Defendant to account for all such Rents it has collected since June 16, 2017, and further directing Defendant to remit all such Rents to the duly appointed Receiver, as described and qualified herein, pending further order of this Court;

(d)   damages for breach of contract under the Loan Documents; and

(e)   such other and further relief the Court may deem just and appropriate under the circumstances.

**COUNT I**
**ACCOUNTING – RENTS AND PROFITS**

31. Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

32. The Mortgage grants Fannie Mae possession of all Rents upon the occurrence of an Event of Default under the Loan Documents.

33. Fannie Mae is entitled to enforce and exercise its rights in all Rents generated by the Facility.

34. The Fannie Mae has demanded that Borrower fully comply with all of its Loan Obligations, which include an obligation to hold all Rents in trust for Fannie Mae.

35. Borrower continues to use the Rents in contravention of the Loan Documents.

36. Accordingly, the Fannie Mae demands that the Borrower be compelled to provide an accounting for all Rents and Profits generated by the Facility and related Collateral from and after June 16, 2017.

**COUNT II**
**APPOINTMENT OF A RECEIVER**

38. Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

39. Pursuant to Fed R. Civ. P. 66, the Court may appoint a receiver upon application by a party in writing.

40. A duly appointed receiver is an officer of the Court whose powers are set forth by 28 U.S.C. § 959(b), which provides (in pertinent part),

> [A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which the property is situated, in the

same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b).

41. Furthermore, at the time Borrower obtained the Loan, it *expressly consented to the appointment of a receiver upon occurrence of an Event of Default*. Specifically, Section 3(e) of the Mortgage provides as follows:

Notwithstanding any other right provided Lender under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Borrower's solvency, and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 3. **If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver**, including the appointment of a receiver ex parte, if permitted by applicable law.

42. Furthermore, pursuant to Section 3 of the Mortgage, upon default, Borrower's right to collect Rents from the Facility is automatically terminated, and Fannie Mae is immediately entitled to be in possession of all Rents. Moreover, Section 3 provides that upon an Event of Default, Fannie Mae may require Borrower to surrender possession of the Property to Fannie Mae or to a receiver appointed to collect the Rents. Despite Fannie Mae's recourse in and to the Collateral, including the Rents, Borrower continues to collect Rents from the Facility.

43. Fannie Mae has identified and requests that the Court appoint **Tarantino Properties, Inc.** ("Receiver"), as Receiver for the Facility, with Salvatore Thomas, its Executive Vice-President for Multifamily Properties, to serve as the primary contact person. Tarantino and its principals have extensive experience in multifamily asset management, acquisitions, finance, leasing and property management, as well as significant experience as court-appointed receiver in Alabama and other southeastern states. Materials describing the experience and expertise of Tarantino Properties, Inc., are attached hereto as **Exhibit "K"**.

44.     Pursuant to Section 3 of the Mortgage and this Court's equitable powers, Fannie Mae requests that the Receiver have, at Borrower's expense, all of the usual powers and duties of receivers in similar cases, including, without limitation, the full power to hold, develop, rent, lease, manage, maintain, operate, and otherwise use or permit the use of the Collateral, subject to Fannie Mae's approval (collectively, the "Receiver's Powers"), including, without limitation, the power to:

(a)     Enter upon and take possession and control of the Facility and all other Collateral, and to perform all acts necessary and appropriate for the operation and maintenance thereof;

(b)     Take and maintain possession of all documents, books, records, papers and accounts relating to the Facility;

(c)     Exclude Defendant and its agents, servants and employees wholly from the Facility, including changing any and all locks to the Facility;

(d)     Allow Fannie Mae, its counsel, appraisers, and other independent third-party consultants engaged by Fannie Mae or its counsel access to the Facility at all reasonable times to inspect the Facility and all books and records, and to cooperate with Fannie Mae, its counsel, appraisers and other independent third-party consultants to evaluate the Facility;

(e)     Manage and operate the Facility under any existing name or trade name (or new name) if the Receiver deems appropriate to do so, subject to the consent of Fannie Mae;

(f)     Exercise any and all rights of Defendant and/or Fannie Mae (in any event subject to Fannie Mae's consent) in and to any and all license and/or franchise agreements;

(g) Retain, hire or discharge on-site employees at the Facility (none of whom are or shall be deemed to be employees of Fannie Mae) without any liability to the Receiver or Fannie Mae;

(h) Establish pay rates for on-site employees at the Facility;

(i) Preserve, maintain, and make repairs and/or alterations to the Facility;

(j) Conduct a marketing or leasing program with respect to the Facility, or employ a marketing or leasing agent or agents to do so, directed to the leasing or sale of the Facility under such terms and conditions as Fannie Mae may in its sole discretion deem appropriate or desirable;

(k) Employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Fannie Mae may in its sole discretion deem appropriate or desirable to implement and effectuate the rights and powers granted therein;

(l) Execute and deliver, as attorney-in-fact and agent of Defendant or in Defendant's own name, such documents and instruments as are necessary or appropriate to consummate transactions authorized by order of this Court;

(m) Enter into such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Fannie Mae may in its sole discretion deem appropriate or desirable;

(n) Collect and receive all Rents from the Facility;

(o) Eject tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements;

(p) Pursue legal remedies for unpaid Rents and Profits, payments, income or proceeds in the name of Defendant;

(q) Maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent;

(r) Compromise or give acquittance for Rents and Profits, payments, income or proceeds that may become due;

(s) Determine and report to the Court and Fannie Mae whether any Rents and Profits previously received by Defendant have been used for purposes other than for the maintenance, management and operating expenses of the Facility;

(t) Require any and all officers, directors, managers, agents, representatives, independent contractors, partners, affiliates, attorneys, accountants, shareholders and employees of the Defendant to turnover and deliver to the Receiver any and all Rents and Profits in their possession;

(u) To open and review mail directed to Defendant and its representatives pertaining to the Facility or the Collateral;

(v) Analyze, determine and implement the best approach to maximize value from the Collateral for the benefit of Defendant's creditors and interest holders, including, without limitation, marketing the Facility for sale as a going concern, subject to Fannie Mae's prior written approval, entering into contracts to sell the Facility (with final authority to sell requiring Court approval, upon motion with notice to all lienholders); provided, however, that in no event shall Receiver's power to market the property for sale, or any other power granted hereunder, in any way impair Fannie Mae's ability to exercise its rights and remedies under the Loan Documents, including, without limitation, the right to foreclose the Mortgage;

(w) Facilitate the assumption of the Loan by a third party, subject to Fannie Mae's prior written approval;

(x) Enter into contracts and agreements necessary to continue normal operations of the Facility in the name of Defendant or Receiver;

(y) Amend, modify or terminate any existing contracts affecting the operations of the Facility, but only upon terms and conditions that are subject to Fannie Mae's approval;

(z) Pay all appropriate real estate taxes, personal property taxes, or other taxes or assessments against the Facility, from funds in property reserves, funds generated by the Facility, or funds advanced by Fannie Mae (in Fannie Mae's sole discretion);

(aa) Exercise all rights of Defendant in and to all government-issued permits, certificates, licenses or other grants of authority, to take all steps necessary to ensure the continued validity of such permits, certificates and licenses, and to take all steps necessary to comply with all requirements, regulations and laws applicable to the Facility;

(bb) Maintain a separate account with a federally insured banking institution or a savings association with offices in the State of Alabama in the Receiver's own name, as Receiver, from which the Receiver shall disburse all payments authorized by order of this Court;

(cc) Receive and endorse checks pertaining to the Facility, either in Receiver's name or in Defendants' name;

(dd) Do any acts which Fannie Mae (in its sole discretion) deems appropriate or desirable to protect the security hereof and use such measures, legal or equitable (as Fannie Mae in its sole discretion) deems appropriate or desirable to implement and effectuate the provisions of the Loan Documents.

45.     Pursuant to Section 3 of the Mortgage, and as a result of Borrower's failure to meet its obligations under the Loan Documents as set forth above, including, without limitation, the Events of Default, Fannie Mae is entitled to the appointment of the Receiver.

46.     Fannie Mae asserts that the Receiver is necessary to take control of the Collateral to receive and manage the Rents, to prevent any waste and diminution in value of the Collateral and to protect the Fannie Mae's interests in the Collateral.

47.     Fannie Mae reserves the right to make future requests that the Court expand the Receiver's Powers should the same be deemed necessary.

48.     Fannie Mae requests that receipts received from the operation of the Facility be applied to reimburse the Receiver for all reasonable costs and expenses that it (or its delegates) incur as a result of serving as receiver, for payment of insurance premiums and management fees authorized thereunder, to compensate Receiver for its services as receiver, and for payment of all Obligations.

49.     In accord with the Mortgage, the appointment of the Receiver should not impair or in any manner prejudice the rights of Fannie Mae to receive payment of the Rents pursuant to the terms and provisions of the Loan Documents or to exercise Lender's rights under the Loan Documents.

50.     Fannie Mae requests the Receiver be authorized to remit to Fannie Mae all funds, proceeds and Rents that constitute Collateral of Fannie Mae for application to the indebtedness of Defendant under the Loan Documents, to the extent not expended for any of the purposes herein authorized.

51.     Fannie Mae requests that this Court enter an order providing that Receiver shall be compensated for its services as Receiver as set forth in the Motion and proposed Order filed

contemporaneously herewith (collectively, the "Receivership Fee").

52. Fannie Mae requests that the Court enter its order allowing payment of the Receiver Fee to the receiver from the operations of the Collateral.

**COUNT III**
**EXTRAORDINARY RELIEF – TEMPORARY RESTRAINING ORDER**
**(FIRST REQUEST)**

53. Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

54. Pursuant to the provisions of the Mortgage and Fannie Mae's revocation of Borrower's right to collect the Rents, Fannie Mae is entitled to collect the Rents and apply the same in accordance with the Loan Documents.

55. Fannie Mae has notified Borrower that Fannie Mae is entitled to all post-default Rents and that such Rents are to be held in trust for Fannie Mae, but Borrower has failed and refused to acknowledge the same.

56. Borrower has failed to apply the Rents in accordance with the provisions of the Loan Documents, including its failure to make Critical Repairs Deposit and Deferred Maintenance Deposit as required under the Loan Documents.

57. Fannie Mae reasonably believes its interest in the Rents is endangered and likely to be lost or rendered inadequate without the entry of injunctive relief requiring payment and escrow of the Rents to the receiver.

58. Therefore, in addition to the rights granted Fannie Mae under the Loan Documents, the equities dictate that Fannie Mae be granted a temporary restraining order and, upon hearing, a preliminary and permanent injunction:

(a) prohibiting Defendant from disbursing, collecting, disposing, and converting any Rents;

(b) directing Defendant to account for all such Rents it has collected since June 16, 2017;

(c) further directing Defendant to remit all such Rents to the duly appointed receiver; and

(d) restraining and enjoining Defendant from collecting, transferring, disposing, wasting, and converting the Rents and other collateral securing the indebtedness owed.

59.     Fannie Mae will suffer immediate and irreparable injury, loss, and damage unless Defendant is restrained and enjoined as requested hereunder.

60.     Moreover, Fannie Mae is likely to prevail on the merits of this Complaint and the balance of equities favors entry of the requested equitable relief.

61.     The injuries, losses, and damages to Fannie Mae cannot be remedied by money damages alone.

62.     Because the Fannie Mae has no adequate remedy at law and there is a substantial likelihood that it will prevail on the merits of this Complaint, the equitable relief sought herein is appropriate.

**COUNT IV**
**EXTRAORDINARY RELIEF – PRELIMINARY AND PERMANENT INJUNCTION**
**(FIRST REQUEST)**

63.     Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

64.     Fannie Mae has a first priority perfected security interest in the Collateral, and Fannie Mae possesses an assignment of Rents.

65.     Based on the failure of Defendant to meet its obligations under the Note and Loan Documents, its inability to finance operations of its business, and its misapplication and withholding of Rents, Fannie Mae has a good faith basis for being gravely concerned about the protection and preservation of the Collateral.

66.     Absent entry of a preliminary injunction restraining and enjoining Defendant from collecting, transferring or disposing of any of the Collateral, including the Rents, Fannie Mae reasonably believes that Rents may be transferred, disposed, wasted, expended, converted, and destroyed in violation of the Loan Documents, thereby causing irreparable harm to Fannie Mae.

67.     As manifested in the aforementioned factual allegations, Fannie Mae is likely to prevail on the merits of this action.

68.     Fannie Mae has sustained and will continue to sustain immediate and irreparable injury as a result of Defendant's actions concerning collection of Rents and refusal to remit the same to Fannie Mae.

69.     With respect to such conduct by Defendant, Fannie Mae has no adequate remedy at law.

70.     The balance of the equities favors the issuance of a preliminary injunction in favor of Fannie Mae.

71.     Accordingly, Fannie Mae requests this Court enter a preliminary injunction requiring Defendant and its agents to:

(a)     Preserve intact all Rents currently in its possession or subsequently received from the Collateral pending the appointment of a Receiver; and

(b) Immediately pay, upon appointment of a Receiver, all Rents (including security deposits) in its possession or subsequently received from the Collateral to the Receiver; and

(c) Surrender possession of the Facility in order to allow the Receiver to operate the same; and

(d) Turn over to the Receiver all books, records and accounts affecting the Facility.

72. Upon hearing, Fannie Mae requests that the Court issue a permanent injunction prohibiting Defendant from transferring, converting, or disposing of any of the Rents and directing Defendant to remit all Rents in its possession or subsequently received to the Receiver.

**COUNT V**
**BREACH OF CONTRACT – BORROWER**

73. Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

74. Borrower executed the Loan Documents that secured the Loan.

75. Fannie Mae is the holder of the Loan Documents and is entitled to enforce the Loan Documents.

76. Under the Loan Documents, Borrower incurred various contractual obligations to Fannie Mae, including the obligation to make the Critical Repairs Deposit and Deferred Maintenance Deposit and to turnover the Rents to Fannie Mae upon default and the obligation for payment of certain losses, damages, and costs arising out of, among other things, the misapplication or conversion by Borrower of any Rents following default under the Note. Borrower has failed to remit all Rents, including post-default Rents, to Fannie Mae.

77. Borrower has breached its obligations to Fannie Mae under the Loan Documents

by failing to make the Critical Repairs Deposit and Deferred Maintenance Deposit and to turnover to Fannie Mae the Rents, including post-default Rents, thereby causing damages to Fannie Mae.

78. Accordingly, Fannie Mae demands judgment against Borrower for breach of contract under the Loan Documents in an amount to be determined at trial, together with all accruing interest and costs, including, without limitation, default interest, prepayment premiums, attorneys' fees, and all expenses incurred by Fannie Mae in collecting the Obligations.

**PRAYER FOR RELIEF**

**WHEREFORE**, Fannie Mae respectfully requests the following relief:

1. That the Court appoint Tarantino Properties, Inc., as receiver to take possession of the Collateral with responsibilities and authorities consistent with the Receiver's Powers as set forth in accordance with the terms of the proposed *Order Appointing Receiver and Granting Related Injunctive Relief*, attached hereto as **Exhibit "L"**;

2. That the Court grant Fannie Mae and/or the duly appointed receiver injunctive relief which, among other things: (i) enjoins the Defendant from interfering with the duties of the receiver and/or Fannie Mae; (ii) directs the payment of all Rents, receipts and revenues to the receiver and/or Fannie Mae; and (iii) provides all other relief as requested herein and as may be necessary to preserve and protect the Collateral and in aid of the duties conferred on the receiver and/or Fannie Mae by this Court;

3. That the Court enter an order requiring the Defendant to provide an accounting for and turnover of all Rents;

4.      That the Court enter judgment in favor of Fannie Mae against Borrower in an amount to be determined at trial**,** to the fullest extent to which Fannie Mae is entitled under the Loan Documents;

5.      That the Court, if requested, direct the receiver to administer the Collateral in a manner which will not jeopardize the operation of the Collateral, including the Facility, while maximizing the amount realized by Fannie Mae from the Collateral; and,

6.      For any such other, further, or different relief to which Fannie Mae may be entitled.

Respectfully submitted, this the 16th day of October, 2017.

BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, PC


*/s/ Matthew M. Cahill*
Matthew M. Cahill (Alabama Bar # 4087-E64C)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
420 Twentieth Street North
Wells Fargo Tower, Suite 1400
Birmingham, Alabama 35203
Tel:       (205) 328-0480
Fax:      (205) 322-8007
Email: mcahill@bakerdonelson.com


DEFENDANT TO BE SERVED BY PRIVATE PROCESS SERVER.

**VERIFICATION**

I, Amy Sogga, am Asset Manager of Federal National Mortgage Association ("Fannie Mae"), and one of the custodians of Fannie Mae's business records pertaining to the **PF Sunrise Pointe LLC**, having first being duly sworn and being authorized to make this statement, do make oath that I am an adult citizen competent to testify to the matters stated herein, that I have read the foregoing Verified Complaint and have examined the documents attached as Exhibits thereto, and that, based upon my personal knowledge of the facts stated therein and upon my review of the records of Fannie Mae pertaining to the **PF Sunrise Pointe LLC** that were kept as a regular practice of Fannie Mae in the course of Fannie Mae's regularly conducted business activity, and that were made at or near the time of the occurrence of the matters set forth, the facts stated in the Verified Complaint are true and the documents attached as Exhibits are accurate copies of the records of the regularly conducted activity of Fannie Mae pertaining to the **PF Sunrise Pointe LLC.**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**

By: Amy Sogga
Name: Amy Sogga
Title: Asset Manager

STATE OF Texas
COUNTY OF Dallas

Personally appeared before me, the undersigned authority in and for said State and County, on this 11th day of October, 2017, within my jurisdiction, the within named Amy Sogga, who acknowledged to me that she/he is a Asset Mgr of Federal National Mortgage Association ("Fannie Mae"), and that for and on behalf of Fannie Mae, and as the act and deed of Fannie Mae, he/she executed the above and foregoing Verification after first having been duly authorized by Fannie Mae so to do.

Linda S. Henderson
Notary Public

My commission expires:
4-19-20

LINDA S. HENDERSON
My Notary ID # 1511536
Expires April 19, 2020

4832-4047-2912 v3
2903115-000048